---

### L. BOYERS SONS CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 11, 1912.)

No. 149.

1. COLLISION (§ 38*)—RULES OF NAVIGATION—RIGHT TO ASSUME PROPER NAVIGATION.

A privileged vessel is entitled to assume that, although the burdened vessel may at first propose to exchange rights of way, it will, if such proposal be rejected, conform to the rules of navigation.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 37, 38; Dec. Dig. § 38.*]

2. COLLISION (§ 137*)—SUIT AGAINST UNITED STATES—SPECIAL ACT OF CONGRESS AUTHORIZING.

Under a special act of Congress for the relief of the owner of a lighter injured in collision with a government vessel, and of her cargo, which was lost, authorizing a court of admiralty to pass on the case, and, if it should determine that the government vessel was in fault, providing that the vessel and cargo owners should be reimbursed for their damages and loss, recovery for loss of the cargo is not precluded, because it was insured and the insurance collected.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 291; Dec. Dig. § 137.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the L. Boyers Sons Company against the United States. Decree for libelant, and respondent appeals. Affirmed.

The lighthouse tender Cactus, a government vessel, was in collision with the steam lighter Climax; the latter vessel being herself injured, and losing a cargo of sugar which she was carrying for others. Her owners reimbursed the owners of the sugar for its loss.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Congress passed an act (Act Jan. 23, 1909, c. 39, 35 Stat. 1404) for the relief of the owners of the lighter and of the cargo laden aboard thereof. It provided that the claims might be presented to the District Court, Southern District of New York, sitting as a court of admiralty. Such court was given jurisdiction to hear and determine and to render judgment thereon upon the same principles and measures of liability and damages in like cases in admiralty. It further provided that, if it should appear that responsibility rests with the Cactus, the court shall then proceed to ascertain and determine the amounts which should be paid to the owners, respectively, of the Climax and of her cargo, in order to reimburse them for the losses and damages so sustained.

The result of the hearing in the District Court was a decree in favor of the owners of the Climax for the amount of damage done to the boat and for the cargo damage, which the owners of the boat had made good to the owners of the cargo. From this decree the government appealed.

Henry A. Wise, U. S. Atty., and Addison S. Pratt and Roger H. Clarke, Asst. U. S. Attys.

J. F. Foley, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). We find no merit in the assignments of error which refer to the navigation of the two vessels. The finding of the District Judge that the Climax blew a single whistle, which was not answered, and thereafter a second single whistle, which the Cactus answered with two whistles, is clearly supported by the testimony, including the disinterested witnesses. The contradictory testimony of the Cactus as to the signals, that *she* gave the first signal (a two-blast one) is overwhelmingly controverted. But even the Cactus concedes that at no time did the Climax assent with a two-whistle signal to the Cactus' two-whistle signal.

Upon the story of the master of the Cactus it is manifest that the collision happened because of his entire disregard of the starboard hand rule, a disregard which resulted, as his testimony shows, from his ignorance of its requirements.

[1] Appellant's counsel, however, contends that the Climax was also in fault: First. Because she did not hear and answer the first signal of the Cactus. The evidence of the disinterested witnesses corroborates that of the Climax that the latter blew the first whistle, which the Cactus crossed. Second. Because the Climax did not starboard when she saw that the Cactus intended to keep on. But as we pointed out in The Chicago and City of Augusta, 125 Fed. 712, 60 C. C. A. 480, and in The George S. Schultz, 84 Fed. 508, 28 C. C. A. 476, the privileged vessel is entitled to assume that, although the burdened vessel may at first propose to exchange rights of way, it will, if such proposal be rejected, conform to the rules of navigation.

[2] The only other assignment of error is that libelant was not entitled to recover damages for the lost cargo, because the same had been insured and insurance collected. In our opinion the provision in the act that the owners of vessel and cargo respectively should be *reimbursed* for losses and damages sustained does not preclude recovery for such a loss, which has been covered by insurance through some

· collateral contract. What Congress had in mind was merely the foreclosing of any argument that unusual extraordinary claims—such as expected profits or consequential losses should be allowed. Claims of such a character had been excluded by somewhat different language in other relief acts, which were considered in the authorities cited on appellant's brief. The construction contended for would prohibit the recovery of damages by the cargo owners, if it appeared that the shipowner, who was liable as bailee of the cargo, were solvent. Such certainly could not have been the intention of Congress.

The decree is affirmed.